## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  Robert Joseph Kroboth and | : | Chapter 12 |
| Melanie Ann Kroboth | : | |
| Debtors | : | Case 4:16-bk-13342 |

### SECURED CREDITOR FULTON BANK, N.A.'S OBJECTION TO DEBTORS' MOTION TO MODIFY CHAPTER 12 PLAN POST-CONFIRMATION PURSUANT TO 11 U.S.C. § 1229

Fulton Bank, N.A. ("**Fulton**"), by and through its undersigned counsel, hereby objects to Debtors' Motion to Modify Chapter 12 Plan Post-Confirmation Pursuant to 11 U.S.C. § 1229 (the "**Motion**") and in support hereof, avers as follows:

### Background

1. Fulton is a secured creditor of Debtors in the amount of $3,082,120.08, as of the Petition date, by virtue of, *inter alia*, mortgages granted by Debtors to secure the repayment of monies loaned by Fulton (the "**Mortgages**"). *Claim No. 5. True and correct copies of the Mortgages are attached to Fulton's Proof of Claim.*

2. Fulton's claim (the "**Claim**") is further secured by a security interest in all of Debtors' "Inventory, Accounts, General Intangibles, Farm Products, Livestock (including all increases and supplies) and Farm Equipment" (the "**Farm Collateral**") whether then owned or thereafter acquired, as defined in more detail in, and evidenced by, an Agricultural Security Agreement dated June 4, 2014 (the "**Security Agreement**"). *A true and correct copy of the Security Agreement is attached to Fulton's Proof of Claim.*

3. Based upon the values ascribed by Debtors on their schedules to the collateral securing Fulton's Claim, Fulton has been over-secured during the entire

pendency of this bankruptcy and thus interest has continued to accrue on Fulton's Claim since the petition date.

4. By Order dated June 8, 2017 (the "**Confirmation Order**") (Doc 64), the Honorable Richard E. Fehling confirmed the Third Amended Chapter 12 Plan and Addendum to Third Amended Chapter 12 Plan submitted by the Debtors (collectively, the "**Plan**") (Doc 54 and Doc 60).

5. Pursuant to the Plan, Debtors are obligated to make quarterly payments to the Trustee in increasing amounts through 2021. (Plan ¶1)

6. Specifically, in 2020, those quarterly payments are to be in the amount of $105,000.00; with the most recent payment due on March 27, 2020, and the next payment due on June 26, 2020. *Id*.

## Debtors' Failure to Comply with Plan

7. Debtors failed to make the Plan payment due on March 27, 2020 and by letter dated April 9, 2020, Bank sent notice of this default to Debtors and their counsel in accordance with paragraph 4.D of the Plan, yet Debtors have not cured this default.

8. When Debtors did not cure this default, on April 30, 2020, Fulton filed a Motion to Dismiss the bankruptcy (Doc 105) (the "**Motion to Dismiss**") and a hearing thereon is scheduled at the same time as the hearing on the Motion.

9. As more fully set forth in the Motion to Dismiss, Debtors have made every Plan payment late since the confirmation of the Plan; some an entire quarter late.

2

10. In addition to their Plan payments, Debtors are obligated to pay Fulton $30,000.00 on a quarterly basis pursuant to a loan outside of the Plan (the "**Out of Plan Loan**"); a relationship memorialized in the Plan.

11. Premised on Debtors' representations to Fulton that they intended to sell their farm to their son and pay Fulton in full with the proceeds therefrom, Fulton gave Debtors time to cure each payment default.

12. Fulton's patience and willingness to allow Debtors to repeatedly default on their Plan obligations without recourse was conditioned entirely on the expectation of payment in full in less time that called for in the Plan and the Out of Plan Loan.

13. Last year, when the sale of their farm to their son appeared impossible due to their son's inability to obtain sufficient financing, Fulton filed a motion to dismiss (Doc 96), after Debtors had failed to make Plan payments

14. This motion was resolved through a stipulated Order (Doc 102) allowing Debtors time to make their Plan payments throughout the rest of 2019 and to ultimately get current by the end of 2019 (the "**Stipulated Order**").

15. Debtors failed to comply with the Stipulated Order and still owed significant back Plan payments at the end of 2019.

16. Based upon Debtors' representations that the payments in the Stipulated Order would lower the Fulton debt balance to a point where their son could obtain sufficient financing to purchase the farm, Fulton repeatedly gave extensions to Debtors to comply with the Stipulated Order well into 2020.

17. Debtors finally made their last payment to the Trustee pursuant to the Stipulated Order late in February 2020.

18. When Debtors failed to make the very next Plan Payment due at the end of March, it not only became clear that Debtors would not be able to comply with the Plan, but that they no longer had any intent to sell the farm to their son. In essence, the basis for Fulton's patience with Debtors' repeated defaults no longer existed.

19. Additionally, during the pendency of the Plan, Debtors have sold certain pieces of the Farm Collateral without the Bank's permission, harming Bank's position and contradicting the disclosures and representations of Debtors' regarding their financial condition which ultimately led to the confirmation of the Plan.

20. Debtors answered the Motion to Dismiss with no actual defense thereto and filed the instant Motion shortly thereafter.

21. The Motion, however, makes no showing of how Debtor's circumstances have changed since the Plan was confirmed and simply restates the same representations Debtors have been making for years: that they expect to make more money this year.

## Objections

22. "11 U.S.C. § 1229(a) permits a Chapter 12 debtor to seek a postconfirmation modification of a plan of reorganization provided that the plan has not been fully consummated." *In re Wruck*, 183 B.R. 862, 865 (Bankr. D.N.D. 1995)

23. "A bankruptcy court should, however, generally approach the issue of postconfirmation modifications cautiously in light of the fact that such modifications cut against the grain of finality and may operate to frustrate the legitimate expectations of

4

parties to the bankruptcy proceeding." *Id*. (citing *In re Grogg Farms, Inc.*, 91 B.R. 482, 484-485 (Bankr.N.D.Ind.1988). *Accord 5 Norton Bankruptcy Law and Practice 2d* § 111:6, at 111–8–9 (1994).

24. In a situation such as the present where the Debtors have been in default nearly the entirety of their Plan thus far, "[i]n proposing a modification the defaulting debtor must be able to show that the default was the product of circumstances not likely to reoccur and thus amenable to being remedied by the modifications proposed." *In re Hagen*, 95 B.R. 708, 711 (Bankr. D.N.D. 1989).

25. For example, in *Hagen*, the debtor experienced a drought which had a detrimental effect on its farm business. *Id*.

26. In their Motion, the Debtors are seeking one change: to reschedule their 4 yearly payments from the end of each quarter to the last 4 months of the year.

27. Their support for this is their self-prepared income projection indicating that the large majority of their income is expected between September and December 2020.

28. This, however, is not a change from Debtors situation when they filed their Plan; their business has always operated in this manner, with their crops harvested in the summer and early fall and the proceeds therefrom arriving in the fall and early winter.

29. To wit, Debtors have alleged no change in their business operations to support their request for modification.

5

30. As this was the case when they filed their Plan, if this timeline were so important to their ability to make payments, Debtors could have, and should have, proposed this payment schedule back in 2017 when they filed their Plan.

31. Moreover, the timing of receipt of income is irrelevant to Debtors' ability to pay on the current Plan schedule.

32. If Debtors were receiving 85% of their income in the 4th quarter, as their Motion suggests, there is no reason they could not have put aside excess income not paid towards their 4th quarter payments and used those to pay the 1st – 3rd quarter payments the following year.

33. The only logical conclusion to draw herefrom is that either the Debtors do not actually receive the income they estimate, or they do not dedicate a sufficient percentage of their income to their Plan obligations.

34. Either way, these are not legitimate bases to amend their Plan.

35. If they do not have sufficient income to make the Plan Payments – either because it never existed or was spent elsewhere - then changing the payment schedule will accomplish nothing.

36. The only effect of amending the payment schedule is to result in the forgiveness of Debtors' default for failing to make the first quarter 2020 payment and the expected defaults for missing the 2nd and 3rd quarter payments.

37. In 2019, Debtors, pursuant to the Stipulated Order, essentially were obligated to make all of their Plan payments in the 4th quarter, and that still was not enough for them to timely do so; not doing so until the end of February 2020.

38. Importantly, as Fulton's Claim accrues interest, as set forth above, all of these late Plan Payments have resulted in a situation where Debtors may not pay Fulton's Claim in full even if it makes all of its Plan payments.

39. Summarily, through its Motion, Debtors are proposing to modify the payment schedule in the Plan to a schedule with which they could not comply in the past; without any change to the standard operations of their farm.

WHEREFORE, for the reasons stated herein, Fulton Bank, N.A. objects to Debtors' Motion to Modify Chapter 12 Plan Post-Confirmation Pursuant to 11 U.S.C. § 1229 and respectfully request the Motion be denied and Debtors' bankruptcy be dismissed in accordance with Fulton's pending Motion to Dismiss, or if requested by Debtors, converted to Chapter 7.

**BROWN McGARRY NIMEROFF LLC**

Dated: June 8, 2020    By:    */s/ Scott M. Klein*
Scott M. Klein, Esquire
E-mail: sklein@bmnlawyers.com
Attorney ID # 94129
158 W. Gay Street, Suite 200
West Chester, PA 19380
Tel.: 610-755-3311/Fax: 484-631-1302

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  Robert Joseph Kroboth and | : | Chapter 12 |
| Melanie Ann Kroboth | : | |
| Debtors | : | Case 4:16-bk-13342 |

**CERTIFICATE OF SERVICE AND NOTICE**

      I, Scott M. Klein, Esquire, hereby certify that I am more than 18 years of age and that on June 8, 2020, I served a copy of the foregoing Secured Creditor Fulton Bank, N.A.'s Objection to Debtors' Motion to Modify Chapter 12 Plan Post-Confirmation Pursuant to 11 U.S.C. § 1229 on all counsel of record or pro se parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing. I certify under penalty of perjury that the foregoing is true and correct.

David B. Schwartz, Esquire
Goodman and Schwartz
514 Fullerton Avenue, Suite 2
Whitehall, PA 18052
610-434-2023
david@dbsesq.com
*Counsel for Debtors*

John R. K. Solt, Esquire
John R. K. Solt, P.C.
2045 Westgate Drive, Suite 404B
Bethlehem, PA 18017
Phone: (610) 865-2465
Facsimile: (610) 691-2018
jsolt.soltlaw@rcn.com
*Counsel for Debtors*

Michael B. Joseph, Esquire
824 Market Street, Suite 1002
Wilmington, DE 19899
(302) 656-0123
mjoseph@ch13de.com
*Chapter 12 Trustee*

Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 597-4411
USTPRegion03.PH.ECF@usdoj.gov
*United States Trustee*

Thomas I. Puleo, Esquire
KML Law Group, P.C.
Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
*tpuleo@kmllawgroup.com*

        **BROWN McGARRY NIMEROFF LLC**

Dated: June 8, 2020      By:   */s/Scott M. Klein*
                                 Scott M. Klein, Esquire
                                 E-mail: sklein@bmnlawyers.com
                                 Attorney ID # 94129
                                 158 W. Gay Street, Suite 200
                                 West Chester, PA 19380
                                 Tel.: 610-755-3311/Fax: 484-631-1302